This case involves the state's failure to provide a criminal defendant with requested exculpatory evidence. *Page 1110 
Scott Kimberly was indicted for second degree robbery. Thereafter, he filed in Mobile Circuit Court a "Motion for Discovery, Production and Inspection," requesting:
 "Any and all evidence tending to exculpate this defendant.
"* * *
 "All material known to the prosecution, or which through due diligence could be learned from any law enforcement officer of other government agents or prospective witnesses in this case, which is arguably exculpatory in nature or favorable to the accused or which may lead to exculpatory material, including but not limited to:
 "(a) Evidence that defendant may have lacked knowledge of any of the acts alleged in the indictment.
 "(b) Evidence reflecting adversely on the credibility of any prosecution witness.
 "(c) Evidence obtained from or relating to any prosecution information which may be exculpatory in nature.
 "(d) Any Grand Jury testimony which may be exculpatory in nature.
 "(e) The results of any direct or electronic surveillance or other oral interceptions which may be exculpatory in nature.
 "The defense further requests that this Honorable Court include in any order issued pursuant to this motion a notation that, if subsequent to the compliance with an order issued pursuant to this motion, and prior to and during the trial, the District Attorney discovers additional material previously requested or ordered which is subject to discovery or inspection, he shall promptly notify defense counsel of the existence of the additional material."
Subsequent to the trial court's order granting discovery, but prior to the day of trial, Lt. Roderick Roy of the Mobile Police Department, interviewed Kimberly's co-defendant, Sandra Whatley, who was incarcerated in Tennessee. Although she gave several conflicting statements, Whatley indicated that Kimberly had not been in the Mobile area at the time the robbery occurred. This information was passed along to the Mobile County District Attorney's Office. The assistant district attorney in charge of the prosecution of Kimberly's case, even though aware of the trial court's order concerning exculpatory evidence, did not furnish the information to Kimberly's defense counsel. Kimberly was convicted.
Sometime later, Kimberly's counsel learned of the undisclosed exculpatory evidence and immediately moved for a new trial on the basis of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), and United States v. Agurs, 427 U.S. 97,96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). A hearing was held on the motion, at which time Lt. Roy testified as to what Whatley had told him. Additionally, the prosecuting assistant district attorney testified that prior to trial he knew of Whatley's statements but "mistaken[ly]" failed to disclose them in compliance with the court's order.
Upon hearing arguments and testimony, the trial judge granted a new trial, stating:
 "Well, throughout the brief of the Defendant there are these words: Suppression on behalf of the State. And I believe that to be a misnomer. I don't believe that there was a suppression on behalf of the State. I think there was a nondisclosure on behalf of the State. The statements made by Miss Whatley no doubt are material. However, I doubt very, very seriously the value to the Defendant.
"* * *
 "I find it highly unlikely that the statements will ever be used. However, there was a request for exculpatory material. In addition to that — and I believe this takes us out of the ambit of Brady — there was a Circuit Court order directing — not making reference — directing the State if they did not produce the material to the Defendant to produce it to the Court.
"* * * *Page 1111 
 "We're outside the ambit of Brady and the Constitution. Mr. Hess, I'm going to grant your motion, set aside the verdict of guilty by the jury and order a new trial."
The state promptly petitioned the Court of Criminal Appeals for writ of mandamus setting aside the new trial order. The Court of Criminal Appeals, 463 So.2d 1106 (1984), granted the writ on the authority of Ex parte Nice, 407 So.2d 874 (Ala. 1981). In its opinion, the Court of Criminal Appeals held:
 "Here, as in Nice, it is the trial judge's reasons for granting the new trial which compels our attention.
"* * *
 "[I]t is clear from the record that the trial judge improperly granted the motion for new trial and incorrectly interpreted the constitutional requirement of due process.
"* * *
 "From the record before this Court, it is clear that the trial judge granted the motion for new trial because the State violated the circuit court's order, not because the act of nonproduction violated constitutional principles or the holding of Brady v. Maryland, supra.
 "Brady held `that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' 373 U.S. at 87 [83 S.Ct. at 1196-1197]. `A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.' United States v. Agurs, 427 U.S. 97, 104 [96 S.Ct. 2392, 2398, 49 L.Ed.2d 342] (1976).
 "When the prosecutor fails to disclose evidence specifically requested by the defendant a new trial should be granted if the nondisclosure `might have affected the outcome of the trial.' Agurs, 427 U.S. at 104 [96 S.Ct. at 2398]. In Ex parte Watkins, 450 So.2d 163 (Ala. 1984), our Supreme Court stated:
 "`Regardless of its admissibility or its trustworthiness, however, the crucial question is the significance of the suppressed information upon the question of Watkins' guilt or innocence. Agurs, 427 U.S. at 112, n. 20 [96 S.Ct. at 2401, n. 20]. The Supreme Court, in Agurs, instructed:
 "`"[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."' 427 U.S. at 112-13 [96 S.Ct. at 2401-02].
 "`On its face, there can be no question that this evidence, if the defendant can prove its truthfulness, would create a reasonable doubt as to the guilt or innocence of the accused, because it identifies other individuals as those who committed the robbery.'"
 "A new trial should not be granted simply because the prosecutor has failed to disclose evidence which the trial court ordered produced without a consideration of the materiality of the evidence and the effect of the evidence on the outcome of the defendant's trial. `The principle of Mooney v. Holohan [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791
(1935)] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.' Brady, 373 U.S. at 87 [83 S.Ct. at 1197].
 "Here, it appears that the trial judge improperly granted a motion for new trial without properly considering the significance of the nondisclosed information upon the question of Kimberly's guilt or innocence. The petition for writ of mandamus is granted and the circuit court is directed to set aside its order granting the new trial." *Page 1112 
Although the Court of Criminal Appeals correctly stated the holdings of Brady, Agurs, and Watkins, supra, the Court's application of those holdings to the present case was in error. In Agurs, supra, the Supreme court stated:
 "The test of materiality in a case like Brady in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made. . . .
 "In Brady, the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable."
We would note that the trial court's statement in granting a new trial is strikingly similar to the language in Agurs. Even though the trial court did express doubts about the admissibility and trustworthiness of Whatley's statement, such doubts may not prevent the granting of a new trial where the nondisclosed evidence is material, having a potential effect on the outcome of the trial. Ex parte Watkins, [Ms. 82-1190, Feb. 3, 1984]. The record clearly shows that the trial court properly disregarded the unreliability of Whatley's statement and granted Kimberly a new trial. It was correct in doing so.
The State argues that a new trial was granted solely because the prosecutor failed to comply with the trial court's pretrial order. Implicit in that argument is the contention that, if this were the case, this Court would now be precluded from addressing the constitutional issues presented. This contention is unsupportable.
First, we cannot say, as did the Court of Criminal Appeals, that the nondisclosed evidence would not have affected the trial's outcome, nor can we say that a new trial was granted solely because of the state's failure to comply with the pretrial order. At best, the trial judge's statements in granting a new trial appear to us to be ambiguous. While he apparently felt that the presence of a court order removed the requirements of Brady and Agurs, he nevertheless couched his order in terms of Agurs-type language. Therefore, we believe that constitutional requirements were a motivating factor, although perhaps not the principal motivating factor, in granting a new trial.
Second, even if the sole reason for granting a new trial was violation of the pre-trial order, the trial judge's mistaken belief that the presence of a court order somehow eliminated the constitutional requirements set forth in Brady and its progeny was in error and in no way restricts our review of the constitutional issues. We are free to look at Kimberly's request for exculpatory evidence, examine the non-disclosed evidence for materiality, and determine for ourselves whether due process mandated its disclosure. In this case it did.
In Watkins, supra, this Court held that evidence indicating that other individuals may have committed the robbery with which defendant was charged, if proved, could create a reasonable doubt as to defendant's guilt. Therefore, the Court concluded that justice required disclosure of that evidence. We perceive the present situation to be, in principle, indistinguishable from Watkins. Here, there was a specific request for exculpatory evidence learned by law enforcement officers; the officers learned of the exculpatory evidence but failed to disclose it. Regardless of its reliability, there can be no doubt that the evidence provided by Whatley, if believed by the jury, would have had an effect *Page 1113 
on the trial by exculpating Kimberly. Consequently, that evidence was material within the meaning of Brady, Agurs, andWatkins, and should have been revealed. The state's failure to do so constituted a violation of due process, and the trial judge did not err in granting a new trial; therefore, we reverse the judgment of the Court of Criminal Appeals and remand the cause to that court for an order not inconsistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.