McMILLAN, Judge.
The appellant was found guilty in a jury trial of burglary in the third degree, in violation of § 13A-7-7, Code of Alabama (1975), and was sentenced to a term of 20 years’ imprisonment. This appeal arises out of that conviction.
I.
The appellant contends that the trial court erred to reversal in denying his motion to dismiss his indictment due to prose-cutorial delay. We do not agree.
The significant facts are as follows:
1985, July 4. The appellant was arrested for the burglary of Foy’s Grocery in Do-than, Alabama.
1985,August. The appellant was indicted for burglary in the third degree.
1985, December. The State nol-prossed this case because the victim, who went out of business as a result of the burglary, could not be located.
1986, February 14. The victim was located, and this case was again submitted to the grand jury. The appellant was indicted for burglary in the third degree, and a warrant was issued for the arrest of the appellant.
1987, February 9. The appellant was arrested on the burglary charge.
1987, March. The appellant was arraigned, and trial in this cause was set for April 20, 1987. The trial court’s April criminal docket was full, however, and trial was rescheduled for September 16, 1987.
1987, September 10. The appellant requested a continuance based on change of counsel; trial of this cause was reset for November 18, 1987.
1987, November 12. The appellant filed a motion to dismiss due to prosecutorial delay, as well as a motion to suppress certain evidence.
1987, November 18. Jury was selected for this trial, and the court conducted hearings on the appellant’s motions.
1987, November 19. Jury found the appellant guilty of burglary in the third degree.
The criteria for determining whether an accused has been deprived of his Sixth Amendment rights to a speedy trial are set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker Court established a 4-part balancing test, which requires inquiry into the following: (1) length of delay; (2) the reason for the delay; (3) the appellant’s assertion of his right; and (4) prejudice to the defendant. The Barker Court held that none of these four factors was “either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.” Id. at 407 U.S. at 533, 92 S.Ct. at 2193.
Length of Delay. A total of 21 months elapsed between the time the appellant was re-indicted in February, 1986 and his trial in November, 1987. Three months of this delay cannot be considered, because it resulted from the appellant’s consent to a continuance of his trial. Nichols v. State, 518 So.2d 851, 852 (Ala.Cr.App.1987); Beaver v. State, 455 So.2d 253, 255 (Ala.Cr.App.1984).
Reasons for the Delay. Of the greatest concern to this Court is the nearly 12 months that passed between the appellant’s *1114 re-indictment on February 14,1986, and his arrest on February 9, 1987. Although the State contends that this delay resulted from the prosecution’s inability to locate the appellant, the record contains no evidence of flight by the appellant to avoid prosecution, no evidence that his location was anywhere other than his permanent address, and no evidence of a diligent attempt by the State to locate him.
However, the record is also void of any evidence suggesting bad faith on the part of the prosecution. No evidence was offered that would indicate that the delay was intentionally caused by the State to gain some advantage over the appellant or to prejudice him. See Kimberly v. State, 501 So.2d 534, 537 (Ala.Cr.App.1986); Lewis v. State, 469 So.2d 1291,1294-95 (Ala.Cr.App.1984), affirmed, Ex parte Blake, 469 So.2d 1301 (Ala.1985). The failure of the State to use its best efforts to locate the appellant must be weighed against it, although not as heavily as a deliberate attempt to delay the trial. Kimberly, id.; Taylor v. State, 429 So.2d 1172, 1174 (Ala.Cr.App.), cert. denied, Taylor v. Alabama, 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983).
Nearly 7 months passed between the time the appellant was arrested and his trial date in September, 1987. The record, although not clear as to this point, suggests that this cause was originally set for trial in April, 1987. It appears, however, that the court’s April criminal docket was full, and that the court reset the appellant’s trial date for September, 1987. This delay must also be weighed against the State, although less heavily than an intentional delay. Barker, supra, 407 U.S. at 531, 92 S.Ct. at 2192. See also Project: Criminal Procedure, 76 Geo.LJ. 707, 840 (1988).
Assertion of the Right. The only assertion of the appellant’s right to a speedy trial was made less than one week prior to his trial on November 18, 1987. Certainly, the appellant could not have been expected to assert this right before his arrest in February, 1987, as there is no evidence that he was aware that he had been re-indicted. Taylor v. State, supra at 1175. Vickery v. State, 408 So.2d 182, 184 (Ala.Cr.App.1981). This, however, does not explain the appellant’s failure to timely assert the right after his arrest. As the Barker Court held:
“Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant’s assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.”
Barker, supra, 407 U.S. at 531-32, 92 S.Ct. at 2192-93.
Accordingly, we do not believe that this factor inures to the benefit of the appellant.

Prejudice.

“The final Barker criterion requires the court to consider any prejudice to the defendant in light of the interests protected by the speedy trial guarantee. The Barker Court identified three such interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern; and (3) limiting the possibility that delay will impair the defense. The Court noted that the third interest is most important, because the inability to prepare a defense ‘skews the fairness’ of the judicial process. In theory, a defendant need not demonstrate prejudice to establish a sixth amendment speedy trial violation. However, courts are usually reluctant to find a sixth amendment violation without a showing of some prejudice. Allegations that post-accusation delay caused witness unavailability or failure of memory are not suffi *1115 cient to show prejudice.” (footnote omitted)
76 Geo.LJ., supra, at 842-43.
The appellant contends that the State’s delay in bringing him to trial impaired his defense by depriving him of an eyewitness, Robert Evans. The appellant alleges that Evans, whom he met while in jail following the first indictment on the instant charge, knew the person who committed the burglary of Foy’s Grocery. During the hearing on his motion to dismiss the indictment, however, the appellant admitted that Evans never said that he would testify on his behalf and never told him who the actual burglar was. Moreover, the appellant also admitted that, even after his arrest following his re-indictment for burglary, he never attempted to locate Evans.
In this respect, the present case is factually similar to United States v. Guerrero, 756 F.2d 1342, 1350 (9th Cir.1984), cert. denied, 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984), wherein the court was faced with allegations that pre-trial delays impaired the defense because one of the appellant’s witnesses could not be found. The Guerrero court found that the appellant failed to show prejudice, noting that the defense made no effort to locate the witness until two years after it knew the witness would be helpful. Here, too, the appellant’s lack of diligence precludes this Court from finding that the appellant was prejudiced by the State’s delay in bringing him to trial.
In applying the balancing test set out in Barker, supra, we find that the trial court did not err in denying the appellant’s motion to dismiss his indictment. While the delay in this case was lengthy, the appellant has not established a denial of his constitutional right to a speedy trial as a matter of law. Kimberly, supra, at 538; Wade v. State, 381 So.2d 1057, 1061 (Ala.Cr.App.), cert. denied, Ex parte Wade, 381 So.2d 1062 (Ala.1980).
“The delay or passage of time alone does not constitute the denial of a speedy trial. ‘No constitutional basis exists for determining what amount of delay deprives a prisoner of his constitutional right to a speedy trial. This determination must be made on a case by case basis.’ ” (citations omitted)
Kimberly, supra, at 538.
II.
The appellant next argues that the trial court erred in denying his motion to suppress his confession.
A.
The appellant initially contends that his confession was the fruit of an illegal arrest and was therefore inadmissible as evidence against him.
The record indicates that at about 3:40 a.m. on July 4, 1985, Officer Burén Wam-bles saw the appellant running across an intersection in Dothan a few blocks from Foy’s Grocery. Just prior to this time, Wambles testified, he had received a dispatch indicating that Foy’s Grocery had been burglarized and advising him to be “on the lookout” for possible suspects. Wambles testified that he stopped the appellant and asked him where he was going, and that the appellant told him that he was going home. Wambles stated that he filled out a “contact card,” which the Dothan police use to record suspicious occurrences, and allowed the appellant to leave. Wam-bles turned this contact card over to the criminal investigation division.
Just prior to 4:00 a.m. on July 4, 1985, Bobby McCallister was stopped by Sergeant Draughon in the immediate vicinity of Foy’s Grocery. After being arrested for the burglary, McCallister gave a statement to Corporal Stanley DeVane in which he implicated the appellant. DeVane had not yet received the contact card from Corporal Wambles at the time McCallister gave his statement, and was not aware that Wam-bles had stopped the appellant.
Corporal DeVane testified that, shortly after obtaining McCallister’s statement, he had the appellant brought in for questioning. The record indicates that the appellant was brought to the police station in a squad car, but that he was not under arrest. The appellant was questioned by De- *1116 Vane, but denied any participation in the burglary and was allowed to leave.
Later the same day, after receiving the contact card from Corporal Wambles, De-Vane had the appellant placed under arrest and transported to the police station. The appellant was given his Miranda warnings, but he did not execute a written waiver. Several hours later, the appellant gave a statement to police concerning his role in the burglary.
Section 15-10-3(3), Code of Alabama (1975), provides that an officer may effect a warrantless arrest “[w]hen a felony has been committed and he has reasonable cause to believe that the person arrested committed it.” In determining whether there was probable cause to arrest, it is not necessary that the officer have before him evidence which would support a conviction for the offense. He must have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the suspect had committed or was committing an offense. Tice v. State, 386 So.2d 1180 (Ala.Cr.App.), cert. denied, 386 So.2d 1187 (Ala.1980); Nikolic v. State, 384 So.2d 1141 (Ala.Cr.App.1979), cert. dismissed, 384 So.2d 1151 (Ala.1980).
In the present case, probable or reasonable cause may be readily established by the fact that the appellant was seen running from the general direction of Foy’s Grocery immediately after the burglary occurred, and by the statement of Bobby McCallister which implicated him in the crime. As the appellant's warrantless arrest was legal under § 15-10-3(3), Code of Alabama (1975), his confession resulting from that arrest was properly admitted into evidence against him.
B.
The appellant also argues that his confession was the product of physical coercion and was therefore inadmissible as evidence.
At his suppression hearing, the appellant testified that, after his arrest and prior to his confession, Officer Jackson put on on rubber gloves, stood, and slapped the appellant’s face for about forty minutes. The appellant also testified that Corporal De-Vane hit him in the head a few times, causing him to have a seizure and lose consciousness. The appellant testified that he made his confession after regaining consciousness.
Bobby McCallister, an accomplice in the burglary, testified on direct examination that the appellant was put in his cell following his arrest, and that he had a seizure while in the cell. With regard to the appellant’s appearance, McCallister gave the following testimony:
“His face was slightly swollen like— you know, like — he was — you know, like —I don’t know. Real puffy. I don’t know if it was because of the lighting — it was swollen real bad.”
During cross-examination, however, McCal-lister was shown a police photograph of the appellant taken prior to the alleged beatings, after which he testified that the photograph represented the appellant as McCallister saw him in his cell.
Roxie Moton, the appellant’s girlfriend, testified that she visited the appellant in jail three days after his arrest. Moton testified that the appellant’s face was “a little more swollen” than it appeared in the police photograph, but that she did not know why it was swollen. Moton further testified that she had never seen the appellant have a seizure.
Corporal DeVane testified that he read the appellant his Miranda rights and obtained an oral waiver from him before he began questioning the appellant. In response to questions from the trial court, DeVane testified that he never threatened the appellant or used physical coercion to elicit his confession. DeVane testified that the appellant appeared to be a little nervous, but that he did not have a seizure while being questioned. DeVane further testified that the appellant did not appear to be under the influence of medication when he made his confession and did not ask for an attorney.
In Watkins v. State, 497 So.2d 1153 (Ala.Cr.App.1986), this Court held the following:
*1117 “ ‘The standards for appellate review of a trial judge’s determination of the admissibility of a confession are as follows: (1) The test for voluntariness involves a consideration of the totality of the circumstances. Haynes v. Washington, 373 U.S. 503, 513-14, 83 S.Ct. 1336, 1342-43, 10 L.Ed.2d 513 (1963). (2) “The admissibility of confessions is for the court, their credibility is for the jury.” Phillips v. State, 248 Ala. 510, 520, 28 So.2d 542 (1946). (3) Where the voluntariness inquiry presents conflicting evidence and the trial judge finds that the confession was voluntarily made, great weight must be given his judgment. “[Wjhere there is a genuine conflict of evidence great reliance must be placed upon the finder of fact.” Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960). (4) This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the great weight of the evidence and manifestly wrong. Harris v. State, 280 Ala. 468, 470-71, 195 So.2d 521 (1967). (5) Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial court need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371, 1375 (Ala.Cr.App.), cert. denied, 347 So.2d 1377 (Ala.1977), and cases cited therein. “Review of the court’s action is limited to determining whether its finding was clearly erroneous.” United States v. Greer, 566 F.2d 472, 473 (5th Cir.1978).’ Williams v. State, 461 So.2d 834, 838 (Ala.Cr.App.1983), reversed on other grounds, Ex parte Williams, 461 So.2d 852 (Ala.1984).”
Id. at 1154-55.
This Court has examined pertinent portions of the record of the suppression hearing and is of the opinion that the trial judge’s findings as to voluntariness are supported by substantial evidence. Evidence offered by the State indicated that the appellant was given his Miranda rights prior to any questioning and that he gave an oral waiver of those rights before making his confession. The State likewise offered testimony indicating that the appellant was not threatened or physically coerced or under the influence of medication at the time the statement was given.
Although the appellant claims that, prior to his confession, he was slapped about the face for about 40 minutes, there is no evidence that he suffered the kind of contusions and abrasions that one would expect from such a beating. Moreover, while the appellant’s witnesses allege that his face appeared swollen after he had given his confession, their testimony is vague and somewhat inconsistent. The credibility of witnesses is for the trier of facts and any conflict between witnesses as to the facts is resolvable by the trier of facts. Wilhite v. State, 485 So.2d 777, 781 (Ala.Cr.App.1985), aff’d, Ex parte Wilhite, 485 So.2d 787 (Ala.1986). No error resulted from the trial courrt’s denial of appellant’s motion to suppress.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All Judges concur.